Steward Gard Douglas v. Commissioner.
Douglas v. Commissioner
Docket No. 13175.
United States Tax Court
1948 Tax Ct. Memo LEXIS 40; 7 T.C.M. (CCH) 828; T.C.M. (RIA) 48239; November 15, 1948
*40 John E. Marshall, Esq., for the petitioner. John P. Higgins, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income tax. Deficiencies were determined as follows: For 1943, $284.36; for 1944,$380; and for 1945, $401, with negligence penalties of $14.22, $19, and $20.05, respectively. The amounts are all in issue. The determinations arise from income tax returns reporting income, and determinations of increased income by the Commissioner, as follows: Petitioner
Determined by
Years
Reported
Increase
Commissioner
1943
$1,257
$1,343
$2,600
1944
1,200
1,800
3,000
1945
1,100
1,900
3,000
[The Facts] The petitioner, Steward Gard Douglas, (the same person as Stewart Gard or Stewart Card Douglas) resides in Oklahoma and filed the income tax returns herein involved with the collector at Oklahoma City. He is a taxicab driver and worked at that calling in the taxable years. The number of days worked by the petitioner in each of the taxable years, average daily mileage driven by him, and the average mileage driven by all cab drivers working for Yellow Cab Company, with which petitioner drove, *41 are as follows: Average
Days
Average
mileage
worked by
mileage of
of Yellow
Year
petitioner
petitioner
Cab drivers
1943
298
106.8
110.5
1944
295
94.4
117.2
1945
306
85.4
106.2
Until October 1943 the petitioner worked with Yellow Cab Company, paying mileage for the use of a taxicab at Oklahoma City, Oklahoma. He started to operate his own taxi about October 1943, but operated under the name of Yellow Cab Company, paying them mileage and a tariff, for use of the name. He paid a little less than $400 for the taxicab, borrowing $212 to make payment. He kept no record of his income as a taxi driver for the taxable years. His living expenses averaged about $1,680 per year. He was a single man living at a boarding house. He suffered with high blood pressure and diabetes, went to see the doctor about once a month and took medicine, including insulin, costing about $10 a week. He sometimes worked only a few hours in a day. He spent from about 90 cents to $1.50 a day for gasoline. He bought another car in 1945, for about $90. During the war years, there were army camps at Oklahoma City, at Will Rogers Field, and Tinker Field. The city was *42 terribly crowded and taxis were very busy. His income tax returns were made out in the Federal Building, on estimates he furnished. He had a checking account with the Central State Bank, which was opened April 21, 1943. Deposits appear therein as follows: 1943, $535; 1944, $1,378.12; 1945, $1,591. Also, petitioner had a savings account in the same bank in which deposits of $440 were made between August 13, 1945, and November 24, 1945. Petitioner did not borrow any money from the Central State Bank from April 21, 1943, to January 3, 1946. The petitioner received some tips. [Opinion] Under the above facts, has the petitioner shown error in the determinations of deficiency made by the Commissioner? In our opinion he has not. His contention is that he was unwell and did not work full time. The record indicates that he worked almost as much as the average cab driver working with the Yellow Cab Company in Oklahoma City, so far as number of miles driven in the average day; and since he worked from 295 to 306 days a year, it is obvious that he worked almost all week days. His average living expenses, according to his testimony and including his estimate of doctor bills, were about *43 $1,680 per year. This seems to be a minimum for he included only two meals a day yet testified that there were also meals at restaurants. He borrowed no money from the bank with which he did business, though in connection with buying a car he did borrow $212. He banked savings of $535, $1,378.12, and $2,031, in the respective taxable years, in addition to buying a car for a little less than $400 in 1943 and another in 1945 for about $90. Adding these savings to his living expenses in the respective years we arrive at approximately $2,235 for 1943, about $3,058 for 1944, and about $3,710 for 1945; but the respective amounts determined by the respondent are $2,600, $3,000, and $3,000 for the three years. Except in 1945 there is no showing that any of the deposits were withdrawn to pay living expenses. Thus it appears that his living expenses and bank deposits indicate, in general, a greater income than determined by the petitioner for 1944 and 1945, and about $375 less than determined for 1943. In that year, however, he purchased a car at somewhat less than $400, paying the difference between that amount and $212, or roughly a maximum of $188. When we consider that it is unlikely that *44 he placed all of his earnings in the savings bank it becomes obvious, we think, that petitioner has not shown that the Commissioner erred. He kept no records and produced none to corroborate his contentions. Though he testified that he had kept his daily expenses on tabs and entered them on a calendar which he kept until the end of the year, the round numbers reported as income by him, $1,257, $1,200, and $1,100, for the respective years, indicate that accounts were not kept. Furthermore, he testified that he merely gave estimates to those who made out his returns. Two revenue agents testified that he had told them that he kept no records, and he admits that he made that statement but explains it as meaning that he did not keep his accounts after he filed his return. His language was "* * * when I made this report to the Tax Commission and filed my return I throwed the calendar away." Elsewhere he testified "* * * I destroyed them I guess." This, however, contradicts his further statements that he had burned the calendar up and that when his income tax returns were made out "I told them I thought I made so much a week, and that was so much a year that I made; and they filed them according *45 to that." This contradicts the idea that he used calendars in making out his returns. Moreover, one of the revenue agents stated that petitioner said he had no records whatever; that he had never kept any records and did not have any to present. From this confused record we have concluded that the petitioner never kept records from which to make, or to support, his income tax returns. His contention of limited work, because of illness, does not stand against the fact that the amount of his mileage was not much below that of the average taxi driver and the further fact that he worked a minimum of 295 days a year. Oklahoma City, with two army air fields, was very crowded and taxis were very busy. He received some tips, though he attempted to minimize them. Under all of these circumstances, we can only conclude, and therefore we hold, that petitioner has failed to demonstrate error on the part of the Commissioner and the deficiencies are affirmed. For the reasons above set forth we likewise affirm the negligence penalties imposed. The record clearly indicates, in our opinion, negligence in the matter of keeping records and preparation of income tax returns. Decision will be entered *46 for the respondent.